### William H. Swartzbaugh and Eliza Swartzbaugh v. Jeremiah Swartzbaugh.

1. SETTLEMENT—*What is, in Renewal of a Mortgage.*—The fact that at the time the mortgage in this suit was executed, the clerk of the court, for the parties, figured up the amount due on the former note and

mortgage, and drew up the papers and witnessed them, should be regarded as a settlement of all antecedent matters in regard to a former mortgage.

**Bill,** to foreclose a mortgage. Trial in the Circuit Court of Edwards County; the Hon. PRINCE A. PEARCE, Judge, presiding. Hearing and decree for complainants; appeal by defendants. Heard in this court at the August term, 1898. Affirmed. Opinion filed March 10, 1899.

CREIGHTON, KRAMER & KRAMER, attorneys for appellants.

J. M. CAMPBELL and HANNA & HANNA, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

Appellee brought suit by bill in chancery against appellants in the Circuit Court of Edwards County, to foreclose a mortgage executed by appellants to him on lands in that county, to secure the note of appellant, William H., to appellee, for $4,178, with interest at 8 per cent, due one year after date. The note and mortgage bore date November 9, 1887, and was made to renew a note of William H. to appellee for $4,356, and 8 per cent interest, dated February 26, 1881, and secured by mortgage on the same lands.

Appellants answered the bill, admitting the execution of the mortgage but denying that anything was due on it, and followed their answer with a cross-bill, to recover back over-payments claimed to have been made on the mortgage debt.

Prior to the execution of the first mortgage appellants had mortgaged the lands to three different parties for various sums.

To pay off these mortgages appellee released his mortgage and appellants mortgaged the lands for $2,500 to the Ætna Insurance Company, and the balance of the money raised on that mortgage after paying off the three prior mortgages was paid to appellees. Appellees' mortgage was made subject to the mortgage of the insurance company.

At the time the mortgage in suit was executed the two brothers, Jeremiah and William, had a settlement, and the amount then found due Jeremiah was $4,178, for which the

note and mortgage in this case were executed. Payments were made and indorsed on the note from time to time, and other payments were made that were not indorsed.

. William claimed he was entitled to and should have credit for $1,500, as of the date of the note, which sum he claimed Jeremiah agreed to allow on the indebtedness for which the note and mortgage were made, if William would mortgage his land to the insurance company, and raise $2,500, and after paying off the three mortgages before mentioned out of the money so raised, pay the balance to Jeremiah.

The cause was referred to the master to take the evidence and he took the testimony of sixteen witnesses besides that of the parties, covering nearly a hundred pages, and reported it to the court without any conclusions of law or fact. In this shape the case was tried by the court below, and in this shape it comes to this court, and appellee's counsel, not being satisfied with appellant's abstract, has filed an additional abstract, which has compelled us to read the entire record.

The evidence in regard to an agreement of Jeremiah to allow William a credit of $1,500 on the debt at or before the execution of the note and mortgage is very unsatisfactory, even if there was a consideration for the agreement. No person seems to have been present when such an agreement was made, and while William testified there was such an agreement Jeremiah testified emphatically there was not.

The evidence shows that at the time the mortgage in suit was executed a Mr. Tibe, who was clerk of the court, was present with William and Jeremiah and figured up the amount due on the former note and mortgage and drew up the papers and witnessed them and took the acknowledgment of the mortgage.

This, we think, should be regarded as a settlement of all antecedent matters in regard to the former mortgage, including the claimed credit of $1,500, especially as years have passed since the transaction and there is no allegation in either the answer or the cross-bill that Jeremiah said or did anything whatever to deceive or mislead his brother, and none in either pleading that the parties had made a

mutual mistake about anything connected with the mortgage, and the evidence would have failed to sustain any such allegation, had it been made.

The evidence of both William and Jeremiah is, that William had a legacy of $1,500 coming to him from his father's estate in Ohio, payable in installments, which he authorized his brother to settle by discounting $275, and in April, 1896, of the remaining $1,225, Jeremiah got $1,000 and William the balance. For this $1,000 and a $300 note, executed by William and his two sons to Jeremiah, he agreed to credit William on his mortgage note, as he testified, the sum of $2,288.88, and William testified the credit was to be $2,500. Jeremiah's testimony is corroborated by a receipt he gave his brother, dated April 1, 1896.

There was evidence of other payments not indorsed on the note.

The court computed and found the amount due on the note to be $2,124, and entered a decree in favor of appellee for that sum.

After a careful examination of all the evidence applicable to each item of the claimed payments, and after a careful computation of the amount due on the note, after allowing such credits as we think are legally established and making the $1,000 in money and the $300 note cancel $2,288.88 of the debt, we find the amount due appellee somewhat larger than the lower court found.

We find no error in the record injurious to appellants, and the decree of the Circuit Court is affirmed.